AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| **FILED** | |
| Jan 31 2025 | |
| Mark B. Busby | |
| CLERK, U.S. DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |
| SAN FRANCISCO | |

United States of America
      v.
Ever Almendariz-Funez and Jefferson Zelaya

)
)
)
)
)
)
)
)

Case No.   3:25-mj-70112 MAG

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     January 29, 2025     in the county of     San Francisco     in the

   Northern    District of     California     , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Possession of methamphetamine with intent to distribute |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Special Agent Anthony Guzman.

☑ Continued on the attached sheet.

 

//s//
*Complainant's signature*

Anthony Guzman, DEA Special Agent
*Printed name and title*

Approved as to form   */s/*
         AUSA Dan M. Karmel

by telephone.
Sworn to before me ~~and signed in my presence.~~

Date:     01/30/2025

*Judge's signature*

City and state:     San Francisco, CA     Hon. Peter H. Kang, U.S. Magistrate Judge
                                                         *Printed name and title*

## AFFIDAVIT OF DEA SPECIAL AGENT ANTHONY GUZMAN

I, Anthony Guzman, a Special Agent of the Drug Enforcement Administration (the "DEA"), being duly sworn, hereby declare as follows:

### OVERVIEW AND PURPOSE OF AFFIDAVIT

1.    This affidavit is submitted in support of a criminal complaint and arrest warrants charging Ever ALMENDARIZ-FUNEZ (alias Edward ALMANDARES) (hereafter "ALMENDARIZ-FUNEZ") and Jefferson ZELAYA (hereafter "ZELAYA") with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

2.    Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are sufficient to establish probable cause to believe that, on or about January 29, 2025, in San Francisco, California, in the Northern District of California, ALMENDARIZ-FUNEZ and ZELAYA each possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

3.    The facts and information set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. To the extent that any information in the affidavit is not within my personal knowledge, it has been made available to me through reliable law enforcement sources, and I believe such information to be true. This affidavit is made for the sole purpose of demonstrating probable cause for this complaint and does not set forth all my knowledge of, or investigation into, this matter. In addition, where I report information I learned from others or from reviewing documents and reports prepared by others, such information is recounted in sum and substance and in relevant part.

### AFFIANT BACKGROUND

4.    I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United

States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

5.      I have been employed by the Drug Enforcement Administration ("DEA") as a Special Agent since November 2005 and I am currently assigned to the Tactical Diversion Squad in the Oakland Residence Office of the San Francisco Field Division. In my current assignment, my duties include investigations into the diversion of controlled substances. In normal, lawful circumstances there is a controlled circle in which a controlled substance travels. The controlled substance will start with the manufacturer, and then it goes to the distributor, then to a doctor, pharmacy, or other registered agent who can dispense the controlled substance legally. The controlled substance finally goes to the consumer, i.e., a patient who has a valid prescription for the controlled substance. The controlled substance can be diverted anywhere along this route. When the controlled substance is diverted from this route, it is my job to investigate the diversion. The investigation can focus on a doctor, pharmacy, or even the customer. Investigations can involve analysis of the Controlled Substance Utilization Review and Evaluation System (CURES), which is a prescription drug-monitoring program run by the State of California; undercover operations; surveillance; phone toll analysis; and search warrants to obtain evidence of the diversion of controlled substances.

6.      While serving as a DEA Special Agent, I have participated in investigations of illicit drug trafficking organizations. Prior to working as a DEA Special Agent, I attended and graduated from the DEA Basic Agent Training Program in Quantico, Virginia. At the DEA Basic Agent Training Program, I received several hundred hours of comprehensive, formalized instruction in the recognition, distribution, manufacturing, and packaging of controlled substances, as well as money laundering techniques, asset forfeiture, and the diversion of pharmaceutical drugs.

7.      Prior to attending the DEA Basic Agent Training Program, I was with the El Paso Police Department as a patrol officer for one year. As an El Paso Police Officer, I attended the El Paso Police Department Training Academy where I received several hundred hours of

comprehensive, formalized instruction in the duties of a patrol officer and in municipal and state law.  I have completed several courses offered by the California Narcotics Officers Association, including training on the abuse of pharmaceutical drugs.

8.      I have spoken to, and worked with, more experienced federal, state, and municipal agents and officers in connection with my work as a DEA Special Agent and El Paso Police Officer.  In the course of my investigative experience as a DEA Special Agent, I have developed experience in the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants.  The investigations in which I have participated have included issues such as the possession with intent to distribute and distribution of controlled substances, the conducting of monetary transactions involving the proceeds of specified unlawful activities and use of monetary instruments to launder those proceeds, and conspiracies associated with criminal narcotics offenses.

## APPLICABLE STATUTE

9.      Possession of Controlled Substance with Intent to Distribute. Under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, methamphetamine is a Schedule II controlled substance.

## FACTS IN SUPPORT OF PROBABLE CAUSE

10.     At approximately 10:00 p.m. on January 29, 2025, law enforcement personnel conducted a controlled buy/purchase of methamphetamine from ALMENDARIZ-FUNEZ, using an undercover law enforcement officer (hereafter the "UC").  The UC approached ALMENDARIZ-FUNEZ and asked him for "$20 of crystal."  ALMENDARIZ-FUNEZ said "Yes" and turned to ZELAYA (who was behind ALMENDARIZ-FUNEZ).  ZELAYA then handed ALMENDARIZ-FUNEZ a translucent crystalline substance in a plastic bag, and ALMENDARIZ-FUNEZ provided the bag with the translucent crystalline substance to the UC. The UC gave ALMENDARIZ-FUNEZ one $20 bill, which had been previously marked on the

top right corner with a black marker, to conclude the purchase. Upon the conclusion of the purchase, the UC provided the pre-determined signal to the law enforcement arrest team that the purchase of narcotics had taken place, after which the arrest team arrived.

11.    Law enforcement arrested ALMENDARIZ-FUNEZ and ZELAYA without incident for the possession and distribution of controlled substances, and they were searched incident to arrest. The search of ALMENDARIZ-FUNEZ yielded the following:

     a.    $248.75 in cash, including the $20 bill with the black mark on the top right corner that the UC had handed to ALMENDARIZ-FUNEZ during the above-described drug transaction;

     b.    Cocaine (2.5 grams with packaging);

     c.    Methamphetamine (18.3 grams with packaging);

     d.    Two bags containing suspected marijuana (14.9 and 3.0 grams with packaging, respectively); and

     e.    a portable electronic scale.

12.    The search of ZELAYA yielded the following:

     a.    $27.10 in cash;

     b.    A bag of blue substances with an inconclusive TruNarc test result (12.2 grams with packaging);

     c.    Methamphetamine (14.6 grams with packaging);

     d.    Cocaine (16.0 grams with packaging); and

     e.    a portable electronic scale.

13.    Based on my training and experience, the quantity of the drugs found on ALMENDARIZ-FUNEZ and ZELAYA are not consistent with personal use quantities and suggest they were possessing those drugs with the intent to distribute them to others. Moreover, in my experience, drug dealers will often carry multiple types of drugs in order to better serve potential clientele.

14.    Based on my training and experience, I also know that drug dealers often carry

scales on their persons to weigh drugs before selling them to clients.  The searches of

ALMENDARIZ-FUNEZ and ZELAYA did not yield any additional paraphernalia for personal

use of controlled substances, such as bulbous pipes, straws, or tin foil.

15.     The suspected methamphetamine purchased from ALMENDARIZ-FUNEZ later

tested presumptively positive for methamphetamine utilizing a TruNarc testing device, which in

my training and experience is a reliable tool for identifying controlled substances.

16.     Additionally, during the searches incident to their arrests, law enforcement

officials found two knives on ALMENDARIZ-FUNEZ's and ZELAYA's persons.  Below are

photos of the knives found on ALMENDARIZ-FUNEZ (left photo) and ZELAYA (right photo):

 

17.     The foregoing facts—including the methamphetamine sale to the UC,

ALMENDARIZ-FUNEZ's and ZELAYA's possession of different controlled substances and

scales but not personal use paraphernalia, and the location of the arrests in San Francisco's

Tenderloin District, an area notorious for a high volume of drug sales activity—leads me to

conclude there is probable cause to believe ALMENDARIZ-FUNEZ and ZELAYA possessed

with intent to distribute the drugs that were seized by law enforcement.

## CONCLUSION

18.     Based on the foregoing facts, my training and experience, and consultation with other law enforcement agents with experience in criminal investigation, there is probable cause to believe that on or about January 29, 2025, in San Francisco, California, in the Northern District of California, ALMENDARIZ-FUNEZ and ZELAYA each possessed with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

19.     Under penalty of perjury, I swear that the foregoing is true and accurate to the best of my knowledge, information and belief.

//s//

_____
ANTHONY GUZMAN
Special Agent
Drug Enforcement Administration


Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) this 30th day of January 2025

_____
HON. PETER H. KANG
United States Magistrate Judge